# United States Court of Appeals
## For the First Circuit

No. 10-2433

UNITED STATES OF AMERICA,

Appellee,

v.

JESSE LEAHY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Boudin, Selya and Howard,
Circuit Judges.

Robert C. Andrews and Robert C. Andrews Esquire P.C. on brief for appellant.
Thomas E. Delahanty II, United States Attorney, and Margaret D. McGaughey, Appellate Chief, on brief for appellee.

February 3, 2012

**SELYA**, **Circuit Judge**. Following the vacation of his original sentence and a remand for resentencing, the district court sentenced defendant-appellant Jesse Leahy to serve a ten-year incarcerative term. The defendant now challenges this newly imposed sentence on two grounds, insisting that the sentencing court abused its discretion in (i) refusing to reconsider certain guidelines-related arguments, and (ii) imposing overly harsh punishment. After careful consideration, we affirm the sentence.

Our first interaction with the defendant occurred when we affirmed his conviction and his original sentence. See United States v. Leahy, 473 F.3d 401 (1st Cir. 2007). That opinion catalogued the facts of the case, see id. at 404-05, and we assume the reader's familiarity with it. We include here only an abbreviated account.

On July 27, 2003, the defendant had an altercation with a group of teenagers near his mother's home in Kezar Falls, Maine. During the imbroglio, he retrieved a 9mm pistol from the house and fired it. In short order, police arrived at the scene, arrested the defendant, searched his mother's house, and discovered both the pistol and a rifle.

The defendant had a criminal record, and federal authorities soon charged him with being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1). On February 17, 2005, a jury found him guilty. At sentencing, the district court determined

that the defendant had three previous convictions for violent felonies. This determination triggered the Armed Career Criminal Act (ACCA), see 18 U.S.C. § 924(e), adversely impacted the defendant's offense level and criminal history score, see USSG §4B1.4, and brought into play a 15-year mandatory minimum sentence, see 18 U.S.C. § 924(e)(1).

The district court proceeded to calculate the defendant's guideline sentencing range (GSR). It started with a base offense level of 24, see USSG §2K2.1(a)(2); added four levels for the defendant's possession of a firearm in connection with another felony, see id. §2K2.1(b)(6)(B);[1] and added two levels for obstruction of justice, see id. §3C1.1. As an armed career criminal, the defendant received a further upward adjustment. See id. §4B1.4(b)(3)(A). These computations brought the defendant's total offense level to 34 and, paired with a criminal history category (CHC) of VI, produced a GSR of 262 to 327 months. The court imposed a term of immurement at the bottom of the range: 262 months.

The defendant unsuccessfully appealed both his conviction and his sentence. See Leahy, 473 F.3d at 413. The Supreme Court denied certiorari. Leahy v. United States, 552 U.S. 947 (2007).

---

[1] At the time of the original sentencing, this guideline was denominated as section 2K2.1(b)(5). At the time of resentencing, it was denominated as section 2K2.1(b)(6). Withal, the relevant wording has not changed. Thus, for ease in exposition, we use the current numerology.

In due season, the defendant moved to vacate the sentence pursuant to 28 U.S.C. § 2255. Pertinently, he claimed ineffective assistance of counsel because his lawyer had failed to object to the inclusion, in the course of the armed career criminal determination, of a predicate conviction (without which the armed career criminal determination could not stand).[2]  See 18 U.S.C. § 924(e)(1) (requiring three predicate convictions as a precondition to the application of the ACCA).  The district court denied the motion.  Leahy v. United States, No. 04-24, 2009 WL 1783532 (D. Me. June 22, 2009).

The defendant appealed but, before his appeal could be heard, the government conceded the defendant's premise that the ACCA should not have entered into the sentencing calculus.  The parties notified us and, accordingly, we vacated the defendant's sentence and remanded for resentencing consistent with the government's confession of error.

With this mandate in hand, the district court held a presentence conference.  The defendant tried to reargue two non-ACCA aspects of the district court's original guidelines calculations.  The court denied this request based on its understanding that our mandate limited the resentencing proceeding

---

[2] The impetus for this motion apparently was the Supreme Court's decision in Begay v. United States, 553 U.S. 137, 142-48 (2008), which afforded a new perspective on the meaning of the term "violent felony" as that term is used in the ACCA.

-4-

to issues affected by the erroneous application of the ACCA. See, e.g., United States v. Matthews, 643 F.3d 9, 12-13 (1st Cir. 2011) (discussing law of the case doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" (citation and internal quotation marks omitted)). But the court did not stop there. It also made clear that it understood the defendant's arguments and believed them to be meritless.

At resentencing, the defendant reiterated that the sentencing guidelines should be calculated anew. The sentencing court rejected this position and found that the defendant still qualified for the two previously calculated non-ACCA enhancements. See USSG §§2K2.1(b)(6)(B), 3C1.1. Then, without reference to the ACCA, the court set the total offense level at 30 and the CHC at V. These findings yielded a new GSR of 151 to 188 months. The court noted that absent the ACCA, the statutory maximum for the offense of conviction was 120 months. See 18 U.S.C. § 924(a)(2). It proceeded to determine that a 120-month sentence was appropriate. This timely appeal followed.

We review criminal sentences for reasonableness, using an abuse of discretion standard. See Gall v. United States, 552 U.S. 38, 46 (2007); United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011). "The review process is bifurcated: we first determine whether the sentence imposed is procedurally reasonable and then

determine whether it is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011). With respect to procedural reasonableness, the abuse of discretion standard is multi-faceted. Within it, we review factual findings for clear error, see United States v. Wallace, 461 F.3d 15, 33 (1st Cir. 2006); arguments that the sentencing court erred in interpreting or applying the guidelines de novo, see United States v. Pho, 433 F.3d 53, 60-61 (1st Cir. 2006); and judgment calls for abuse of discretion simpliciter, see Riva v. Ficco, 615 F.3d 35, 40 (1st Cir. 2010).

In order to achieve procedural reasonableness, a sentencing court must correctly calculate the GSR. See United States v. Gobbi, 471 F.3d 302, 313 & n.7 (1st Cir. 2006). Here, the defendant argues that the sentencing court mishandled this task. In the defendant's view, the court was not required to hew to its previous guidelines-related findings by the law of the case doctrine but, rather, should have afforded him a blank slate at resentencing.

While this argument urges us to examine the scope of our earlier mandate, such an examination is not necessary. Even assuming that the mandate did not require the district court to adhere to its previous guidelines-related findings, the court explicitly stated that it understood the defendant's guidelines-

related arguments and found them unpersuasive.  As we explain below, this alternative holding is fully supportable.

Other than the base offense level, the defendant has challenged every other integer used in calculating the new GSR: the four-level enhancement for possessing a firearm in connection with another felony, the two-level enhancement for obstruction of justice, and the formulation of his CHC.  None of these challenges has merit.

We begin with the district court's four-level enhancement for possessing a firearm "in connection with another felony offense."  USSG §2K2.1(b)(6)(B).  The defendant says the decision in United States v. O'Brien, 130 S. Ct. 2169, 2180 (2010), requires the facts underlying this enhancement to be proved to a jury beyond a reasonable doubt.  This argument represents a triumph of hope over reason.

In O'Brien, the government dropped from the indictment a count that charged the defendants with use of a machine gun in furtherance of a crime of violence.  Id. at 2173.  It nevertheless insisted that if the defendants were convicted of a different charge — using a nonspecific firearm in the same manner — it could establish at sentencing that the firearm was a machine gun and thus trigger the more severe penalties the law imposed.  Id.  In rejecting this reasoning, the Court reiterated that under its Sixth Amendment jurisprudence, elements of a crime which increase the

penalty beyond the prescribed statutory limit must be proved to a jury beyond a reasonable doubt. Id. at 2174-75; United States v. Work, 409 F.3d 484, 488 (1st Cir. 2005). It reaffirmed, however, that sentencing factors affecting a judge's discretion within a statutorily prescribed range may be proved to a judge at sentencing by a preponderance of the evidence. O'Brien, 130 S. Ct. at 2174-75; see Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

There was no threat that the statutory maximum would be increased in the case at hand. Although the imposition of the four-level enhancement affected the underlying guideline calculations, the district court remained bound by the applicable statutory maximum sentence (120 months). See 18 U.S.C. § 924(a)(2). Using the guidelines in this manner did not increase the prescribed range of penalties beyond that maximum; it only informed the court's discretion in imposing a penalty within the statutorily prescribed range. The employment of this paradigm did not offend the Sixth Amendment. See United States v. Molloy, 324 F.3d 35, 40 n.1 (1st Cir. 2003) (rejecting similar Sixth Amendment argument anent the same guideline on the ground that the contested enhancement did not expose defendant to a sentence in excess of the statutory maximum).

As a fallback, the defendant asserts that the meaning of "violent felony" is in flux, see, e.g., Begay v. United States, 553 U.S. 137, 142-48 (2008), and that more recent approaches to the

term should affect the interpretation and application of section 2K2.1(b)(6)(B). The defendant's premise is correct, but the conclusion that he draws from it is not. The meaning of "violent felony," though relevant to the now irrelevant ACCA determination, has no bearing on the applicability vel non of section 2K2.1(b)(6)(B). To invoke this guideline, the sentencing court need only find that the firearm facilitated or had the potential to facilitate "another felony offense." See USSG §2K2.1(b)(6)(B). The term "another felony offense" is separately defined in an application note, see id. §2K2.1, comment. (n.14(C)), and does not depend on the meaning of the term "violent felony."

At any rate, the record makes manifest that an enhancement under section 2K2.1(b)(6)(B) was appropriate. Where, as here, a defendant is convicted of unlawful possession of a firearm, the application of this guideline depends on whether the defendant possessed the firearm "in connection with" another felony offense and whether the additional offense is one qualifying for the enhancement. See United States v. Paneto, 661 F.3d 709, 715 (1st Cir. 2011). At resentencing, the defendant did not contest his use of a firearm in connection with the incident that gave rise to this prosecution. Nor did the sentencing court commit clear error in concluding that the defendant used the firearm in connection with a qualifying felony, which could be viewed either as aggravated assault or as reckless conduct with a firearm. Me.

Rev. Stat. Ann. tit. 17-A, §§ 208, 211, 1252(2), 1252(4). It follows that the four-level enhancement under section 2K2.1(b)(6)(B) was wholly appropriate.

The defendant next protests that the two-level enhancement for obstruction of justice should not have been factored into his sentence. See USSG §3C1.1. He grounds this assertion in our earlier opinion, in which we found that even if the use of that enhancement was error, it was harmless because of the armed career criminal designation. See Leahy, 473 F.3d at 413.

Given the inapplicability of the ACCA, any error in this respect would no longer be harmless. But the defendant did not preserve any objection to the enhancement at his resentencing. Consequently, we review this claim for plain error. See United States v. Dávila-González, 595 F.3d 42, 47 (1st Cir. 2010). "Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

The district court reaffirmed at resentencing its earlier findings. This reaffirmation incorporated the finding that the defendant had perjured himself time and again while testifying at trial. Specifically, the court cited the defendant's incredible

-10-

statements that he did not shoot at the teenagers and that he had done no more than defend himself. These findings are not clearly erroneous, and they are sufficient to support an enhancement for obstruction of justice. See, e.g., USSG §3C1.1, comment. (n.4(B)) (explaining that perjurious testimony may trigger the obstruction of justice enhancement). The defendant has presented no coherent theory as to why the obstruction of justice enhancement was improvident.

That ends this aspect of the matter. "Giving due heed to both the trial judge's unique coign of vantage and the deferential standard of review," Gobbi, 471 F.3d at 315, we uphold the district court's determination that the defendant lied about material events while testifying at trial.

The defendant's next plaint, properly preserved, is that the district court erred in computing his criminal history score. Specifically, the defendant contests two points that the court awarded for probation-related offenses. But even if these points were incorrectly assessed, the defendant would be left with ten points and his CHC would not change. See USSG Ch. 5, Pt. A (sentencing table) (establishing boundaries of CHC V as 10 to 12 criminal history points). Thus, any error in including the contested criminal history points was harmless.[3]

_____

[3] The defendant notes in passing that his original sentencing occurred before the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), which made application of the

-11-

The defendant's final asseveration is that the sentence imposed is substantively unreasonable. In this regard, he notes that the ten-year term is the maximum possible under the statute of conviction and that, in all events, the sentencing court did not give enough weight to his post-conviction rehabilitation. We consider this asseveration "under [an] abuse of discretion rubric, . . . taking into account the totality of the circumstances." United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). We examine, among other things, the district court's oral explanation of the sentence, the parties' arguments, and the contents of the presentence investigation report. See id. at 93.

The defendant's argument that imposition of the statutory maximum sentence is a greater than necessary punishment for his offense is unavailing. A sentencing court's decision to impose the maximum sentence allowed by law does not automatically make that decision unreasonable. Rather, "a sentencing court's ultimate responsibility is to articulate a plausible rationale and arrive at a sensible result." United States v. Carrasco-de-Jesús, 589 F.3d 22, 30 (1st Cir. 2009). The court should evaluate the sentencing factors limned in 18 U.S.C. § 3553(a) and "quantify that evaluation

---

sentencing guidelines advisory, see id. at 245. He suggests that Booker somehow affects his new sentence and requires a remand. This suggestion is hard to follow: the resentencing occurred in the post-Booker era, and there is nothing in the record to support a claim that the district court, at resentencing, considered the guidelines mandatory.

-12-

in a sentence that is fair, just, and in accordance with law." Clogston, 662 F.3d at 593.

The court below fulfilled these responsibilities. The defendant's criminal record was extensive. Furthermore, the low point of his GSR, even without reference to the ACCA, was above the statutory maximum. Here, moreover, the court explained that it had considered all the appropriate factors, but remained unconvinced that the defendant had abandoned his life of crime and concerned that the public would be put at risk if he were incapacitated for a shorter period.[4] The court acted within its discretion in determining that a lengthy sentence best addressed these concerns.

The defendant's argument that the court gave insufficient weight to rehabilitation and remorse lacks force. To be sure, "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation," and proof of that sort "may, in appropriate cases, support a downward variance." Pepper v. United States, 131 S. Ct. 1229, 1236 (2011). In addition, a defendant's rehabilitation is "highly relevant to several of the § 3553(a) factors." Id. at 1242.

---

[4] The defendant maintains that these findings are unfair because his criminal history category had been reduced from category VI to category V when the ACCA dropped out of the case. This reduction, however, has no bearing on the district court's independent determination that the defendant still poses a real threat to society.

-13-

But this is only half of the story. Although a sentencing court must consider evidence of a defendant's rehabilitation as part of its analysis, it is not required to impose a lesser sentence as a result. See United States v. García-Ortiz, 657 F.3d 25, 30 (1st Cir. 2011). In this area, as elsewhere, "[the] court is under a mandate to consider a myriad of relevant factors, but the weighting of those factors is largely within the court's informed discretion." Clogston, 662 F.3d at 593.

So it is here. After hearing from the defendant and his attorney at the resentencing, the court stated that it had taken all the relevant factors into account. This statement "is entitled to some weight." Dávila-González, 595 F.3d at 49. The court then explained its reasons for concluding that a 120-month sentence best served the purposes of sentencing in this particular case. On this record, we have no well-founded basis for second-guessing that determination.

In the last analysis, "there is not a single reasonable sentence but, rather, a range of reasonable sentences" in any given case. Martin, 520 F.3d at 92. Within that universe, a sentencing court has considerable latitude to select the punishment that best fits the criminal and the crime. See Pepper, 131 S. Ct. at 1240; United States v. Gallardo-Ortiz, ___ F.3d ___, ___ (1st Cir. 2012) [No. 08-2292, slip op. at 6]. "That the sentencing court chose not

to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable." Clogston, 662 F.3d at 593.

The bottom line is that the court below articulated a plausible sentencing rationale and imposed a sentence within the range of reasonable outcomes. No more is exigible.

We need go no further. For the reasons elucidated above, we affirm the defendant's sentence.

**Affirmed**.