# United States Court of Appeals
## For the First Circuit

No. 16-1017

UNITED STATES OF AMERICA,

Appellee,

v.

ALVIN HOUSTON, JR., a/k/a/ Chip,

Defendant, Appellant,

No. 16-1020

UNITED STATES OF AMERICA,

Appellee,

v.

SHAWNA CALHOUN,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter, Associate Justice,*
and Baldock, Circuit Judge.**

---

\* The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

\*\* Of the Tenth Circuit, sitting by designation.

Syrie D. Fried on brief for appellant Houston.

Jeffrey W. Langholtz on brief for appellant Calhoun.

Renée M. Bunker, Assistant United States Attorney, and Thomas E. Delahanty II, United States Attorney, on brief for appellee.

---

May 19, 2017

---

**BALDOCK, <u>Circuit Judge</u>**.    Defendants Alvin Houston, Jr., and Shawna Calhoun pleaded guilty to charges of transporting Minor A from Maine to Massachusetts and back to Maine over an eight-day period with the intent that Minor A engage in prostitution.    <u>See</u> 18 U.S.C. § 2421.    The district court sentenced each Defendant to 108 months' imprisonment.    In these consolidated appeals, Houston asserts the district court erroneously applied sentencing enhancements for undue influence and computer use, U.S.S.G. §§ 2G1.3(b)(2)(B) & (b)(3)(B), and the government breached the terms of a proffer agreement in its sentencing memorandum.    Calhoun argues the district court failed to adequately weigh the 18 U.S.C. § 3553(a) factors when fashioning her sentence.    Exercising jurisdiction under 28 U.S.C. § 1291 and concluding that all these claims lack merit, we affirm.

## I.

When, as here, a sentencing appeal follows a guilty plea, we obtain the facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report, and the record of the disposition hearing.    <u>United States</u> v. <u>Dávila-González</u>, 595 F.3d 42, 45 (1st Cir. 2010).    "We rehearse only those facts that are needed to put the claims of error into context."    <u>Id.</u>

On December 13, 2014, Minor A contacted Calhoun via Facebook. In response to a question about her age, Minor A, who was 13 years old, wrote that she was 15. Calhoun replied, "[W]hat I do you need to be of age." They later discussed meeting up to travel from Maine to either Massachusetts or New York.

Calhoun asked her acquaintance Houston to rent a car to drive Calhoun and Minor A from Maine to Boston, Massachusetts. In exchange, the group would pay his expenses and he could visit his child in Boston. On December 23, Houston drove Calhoun, Minor A, and another individual from Maine to Boston. While in Boston, Calhoun used her smartphone to prepare online advertisements on Backpage.com to market her own and Minor A's sexual services. Calhoun coached Minor A on how to post to Backpage.com and also purchased condoms for Minor A to use. Houston, meanwhile, drove Minor A to various locations in the Boston area to engage in prostitution, and Minor A provided the money from these encounters to Calhoun. Both Houston and Calhoun learned Minor A's true age either at the outset of the trip or while in Boston.

On December 30, Calhoun, Houston, and Minor A learned the FBI was looking for Minor A in Massachusetts. Houston then drove the group to Bangor, Maine. While en route, they stopped briefly in the Lewiston/Auburn area, near Minor A's hometown.

Minor A hid in the backseat of the car because the group knew the authorities and her mother were looking for her. Advertisements for Minor A's sexual services in the Bangor area were posted to Backpage.com, and Minor A again performed sexual services for money.

Early in the morning on December 31, Calhoun and Houston drove Minor A to a hotel in the Bangor area so that she could meet with a client. The purported client was a law enforcement detective who identified himself after Minor A entered the hotel room. Police then arrested Calhoun and Houston, who were in the parking lot in the rental car.

That same day, Houston waived his Miranda rights and agreed to speak with the police. He said he knew that Minor A and Calhoun had both been engaging in prostitution at different hotels, that he had driven them to Boston and back to Maine, and that they paid for his expenses during the trip.

In January 2015, Houston and Calhoun were charged in a one-count complaint with transporting an individual in interstate commerce with the intent that she engage in prostitution, and aiding and abetting the same, in violation of 18 U.S.C. § 2421 and § 2.

The following month, Houston agreed to provide information relating to the human trafficking of Minor A via a proffer agreement. The government agreed not to offer Houston's

statements from the proffer session in evidence in its case-in-chief or in connection with a sentencing proceeding, except in a prosecution for false statements or perjury. But the terms of the agreement also provided that, in the event of a prosecution, the government would provide Houston's statements to the district court. The parties acknowledged that the government could not bind the district court from using the statements to the extent permitted by law.

In March 2015, Calhoun and Houston were charged in a one-count indictment with the trafficking charges from the January complaint. Calhoun and Houston each pleaded guilty without a plea agreement. Their separate Revised Presentence Investigation Reports (PSRs) calculated the same offense level under the Guidelines. Starting with a base offense level of 24 under U.S.S.G. § 2G1.3, the PSRs computed 2-level enhancements for unduly influencing Minor A under subsection (b)(2)(B); 2-level enhancements for use of a computer under subsection (b)(3); 2-level enhancements as the offense involved the commission of a sex act under subsection (b)(4)(A); and 3-level reductions for accepting responsibility, resulting in total offense levels of 27. As Calhoun and Houston's prior convictions placed them both in criminal history category III, their Guidelines ranges were 87-108 months' imprisonment.

In December 2015, the district court held separate sentencing hearings for Calhoun and Houston. Overruling Houston's objections to the undue-influence and computer-use enhancements, the district court accepted all of the suggested enhancements and reductions and sentenced each Defendant to 108 months' imprisonment. Calhoun and Houston now appeal their sentences for the reasons described below.

**II.**

**A.**

Houston argues the district court erred in applying U.S.S.G. § 2G1.3(b)(2)(B), which provides for a two-level enhancement when "a participant . . . unduly influenced a minor to engage in prohibited sexual conduct."[1] To the extent Houston objected to the undue-influence enhancement below, we review under a multifaceted abuse of discretion standard, in which we review the district court's interpretation of the Guidelines de novo, its findings of fact for clear error, and its judgment calls for abuse of discretion. United States v. Leahy, 668 F.3d 18, 21 (1st Cir. 2012). But we review the specific claims of error Houston failed to preserve for plain error. Under that standard, Houston must establish that (1) an error occurred;

---

[1] A "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 cmt. n.1; see U.S.S.G. § 2G1.3 cmt. n.1 (referring to the application notes of § 3B1.1 to define "participant").

- 7 -

(2) the error was clear or obvious; (3) the error affected his substantial rights; and (4) the error seriously impaired the fairness, integrity, or public reputation of the judicial proceedings. United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015).

Houston does not dispute that Calhoun warranted the enhancement for her conduct, but he faults the district court for accepting the government's "simplistic" argument that Calhoun's conduct as a "participant" could be attributed to him as relevant conduct. To qualify as a defendant's relevant conduct, acts and omissions of others that occurred during, in preparation for, or while attempting to avoid detection of an offense must be "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). Houston argues the district court held him vicariously liable for Calhoun's manipulation and undue influence over Minor A without making an individualized finding that Calhoun's conduct was "within the scope" of the criminal activity to which he agreed to jointly undertake. Because Houston did not make this specific argument before the district court, but instead argued

that he himself did not unduly influence Minor A, we review this argument for plain error.[2]

Contrary to Houston's assertion, the district court did not uncritically hold Houston vicariously liable for all of Calhoun's conduct, nor did it find that the scope of Houston's involvement was identical to Calhoun's. The district court did not, for example, hold Houston responsible for conduct that predated his involvement, such as Calhoun's Facebook communications with Minor A. Instead, the district court focused on events that took place after Houston joined the criminal activity. The court found that Houston "participated actively with Calhoun" and facilitated her manipulation of Minor A by driving Calhoun and Minor A, renting motel rooms, and sleeping in the same room or same car with Calhoun and Minor A. Although the district court could have more specifically delineated the scope of the criminal activity Houston agreed to undertake, the court nonetheless indicated that Calhoun's conduct was within that scope because Houston actively

---

[2] We make a distinction between events that predated Houston's involvement and those events that took place after he agreed to take part in the criminal activity. While Houston urged the district court not to hold him responsible for Calhoun's manipulation over Minor A that predated his involvement, he did not argue that Calhoun's undue influence over Minor A that occurred after he became involved was outside the scope of the activity he agreed to jointly undertake. As to the latter conduct, Houston disregarded the enhancement's discussion of a "participant" and instead argued to the district court that he did not do anything to unduly influence Minor A.

participated in the offense and facilitated Calhoun's conduct. See U.S.S.G. § 1B1.3 cmt. n.3(B) (U.S. Sentencing Comm'n 2015) (directing a court to determine the scope of criminal activity the defendant agreed to jointly undertake, and allowing the court to consider "any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others").[3]

The district court did not plainly err by inferring that Calhoun's undue influence over Minor A that took place after Houston began participating in the offense was within the scope of the criminal activity he implicitly agreed to undertake. Houston pleaded guilty to transporting Minor A with the intent that she engage in prostitution. Houston relied on Calhoun's and Minor A's success in prostitution activities to pay for his lodging, food, and alcohol. He admitted to

---

[3] In an amendment effective November 1, 2015, the Sentencing Commission restructured § 1B1.3(a)(1)(B) and its commentary to "set out more clearly the three-step analysis" for determining a defendant's relevant conduct in offenses involving multiple participants. U.S.S.G. App. C, Amend. 791. While the commentary had previously addressed the "scope" element of the analysis, the amendment specifically includes that element in the text of the Guideline itself. Id. Houston's revised PSR states that it was prepared under the 2014 Guidelines Manual, but we assume the district court used the 2015 Guidelines Manual when sentencing. See U.S.S.G. § 1B1.11 (directing a sentencing court to "use the Guidelines Manual in effect on the date that the defendant is sentenced," so long as doing so does not violate the ex post facto clause of the Constitution). Although the district court did not expressly set out each step of the relevant conduct analysis, we cannot say it plainly erred in this regard when Houston did not object to the lack of a specific finding under U.S.S.G. § 1B1.3.

overhearing at least some of Calhoun's manipulative conduct over Minor A, including negotiations with customers, yet he continued to drive them between Massachusetts and Maine to meet with customers and avoid authorities who were looking for Minor A.

Further, even when a defendant does not agree to the precise conduct of another participant, the participant's conduct may still be within the scope of the jointly undertaken criminal activity. For example, the Guidelines commentary explains that a defendant who agrees to commit a robbery is accountable for the other defendant's assault and injury of a victim during the robbery, "even if the . . . defendant had not agreed to the assault and had cautioned the [other] defendant to be careful not to hurt anyone." See U.S.S.G. § 1B1.3 cmt. n.3(D). In that case, "the assaultive conduct was within the scope of the jointly undertaken criminal activity (the robbery), was in furtherance of that criminal activity (the robbery), and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense)." Id.

The district court likewise did not abuse its discretion in determining that Houston's own conduct qualified for the undue-influence enhancement. First, the district court applied a rebuttable presumption that Houston unduly influenced Minor A because of their age difference—he was 27 and she was 13. See U.S.S.G. § 2G1.3 cmt. n.3(B) (providing for a

- 11 -

rebuttable presumption of undue influence when a participant is at least ten years older than the minor).  Houston asserts in a footnote that it would be impossible to rebut this presumption when the district court applied it on a theory of vicarious liability, but the district court did not focus solely on Calhoun's conduct.[4]  Rather, the court found Houston's unique role in the offense compromised the voluntariness of Minor A's behavior, including driving Minor A across state borders away from her family and familiar surroundings.  Additionally, Houston drove Minor A to various locations to meet with adult

---

[4] Even if the district court did apply the enhancement solely based on Calhoun's conduct, we disagree with the premise that Houston could not rebut the presumption of undue influence because of their age difference.  The case he cites for support, United States v. Chriswell, 401 F.3d 459 (6th Cir. 2005), is inapposite.  In Chriswell, the Sixth Circuit refused to apply the undue-influence enhancement in cases involving undercover agents portraying imaginary minor victims.  Id. at 469.  The Sixth Circuit reasoned that applying the enhancement, along with its rebuttable presumption, would "render[] the presumption irrebuttable" because an undercover officer can always portray the victim "as an unwilling and inexperienced victim whose will is easily overcome," making it "virtually impossible" for a defendant to show that "the victim's will was not overcome." Id. at 470.

We do not face the same problem of an "irrebuttable presumption" here, even when applying the enhancement based on a different participant's conduct.  A defendant may always point to evidence that the other participant did not unduly influence the minor to engage in prohibited sexual conduct.  Houston did not have that option available in this case because even he agrees that Calhoun's conduct easily warrants the enhancement, but that does not render the presumption irrebuttable as a rule. And so long as that participant's conduct is relevant to the defendant under U.S.S.G. § 1B1.3, the plain text of the Guideline allows a sentencing court to apply the undue-influence enhancement for the conduct of the "participant."

men for sexual encounters, thus giving her few options other than engaging in prohibited sexual conduct. Contrary to Houston's arguments, the district court faithfully discharged its duty to "closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." U.S.S.G. § 2G1.3 cmt. n.3(B). The district court did not abuse its discretion in concluding that Houston failed to rebut the presumption that he unduly influenced Minor A. Between Calhoun's conduct and Houston's own role in the offense, we affirm the district court's application of the undue-influence enhancement to Houston.

**B.**

Houston also argues the district court erred in applying the computer-use enhancement under U.S.S.G. § 2G1.3(b)(3). Specifically, he contends the enhancement does not apply to him because the application note limits the enhancement's scope. We review this legal argument de novo. See Leahy, 668 F.3d at 21.

Under § 2G1.3(b)(3), a defendant is subject to a two-level enhancement "[i]f the offense involved the use of a computer . . . to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a

person to engage in prohibited sexual conduct with the minor."
Application Note 4 to this section states:

> Subsection (b)(3) is intended to apply only to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor. Accordingly, the enhancement in subsection (b)(3) would not apply to the use of a computer or an interactive computer service to obtain airline tickets for the minor from an airline's Internet site.

U.S.S.G. § 2G1.3 cmt. n.4.  There is obvious tension between the plain text of the Guideline in subpart (b)(3)(B), which involves using a computer to "solicit a person to engage in prohibited sexual conduct with the minor," and Application Note 4, which only mentions using a computer to communicate with a minor or a minor's caretaker.  "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  Stinson v. United States, 508 U.S. 36, 38 (1993).

Today, we join the Circuit courts that have concluded Application Note 4 is inconsistent with the plain language of U.S.S.G. § 2G1.3(b)(3)(B).  See United States v. Gibson, 840 F.3d 512, 514 (8th Cir. 2016); United States v. Hill, 783 F.3d 842, 846 (11th Cir. 2015); United States v. Cramer, 777 F.3d 597, 606 (2d Cir. 2015); United States v. McMillian, 777 F.3d 444, 450 (7th Cir. 2015); United States v. Pringler, 765 F.3d

- 14 -

445, 454 (5th Cir. 2014); United States v. Winbush, 524 F. App'x 914, 916 (4th Cir. 2013) (unpublished). As these courts have recognized, § 2G1.3(b)(3) "has two distinct subsections, one relating to inducement of a minor and the other relating to solicitation of a third party." Cramer, 777 F.3d at 606. If the drafters of the Guidelines intended Application Note 4 to apply to subsection (b)(3)(B), "it would render Subsection 3(B) inoperable in all but [a] narrow subset of cases under only one of the criminal statutes the Guideline covers." Pringler, 765 F.3d at 454 (noting that although the Guideline covers six statutory provisions, only a specific scenario under one of the statutes—18 U.S.C. § 2422(b)—could satisfy both the plain text of the Guideline and the Application Note). But "there is no indication that the drafters of the Guidelines intended to limit th[e] plain language [of subsection (b)(3)(B)] through Application Note 4." Cramer, 777 F.3d at 606. Instead, as the Fifth Circuit observed, the Guideline's drafting history shows that the application note was originally meant to apply only to subsection (A), not to subsection (B). Pringler, 765 F.3d at 455. The amendment that changed the application note to encompass both subsections "was a mere drafting error." Id. Applying Stinson, we conclude Application Note 4 is not authoritative as to subsection (b)(3)(B). This reading of Application Note 4 does not, as Houston argues, "nullify" the

- 15 -

note "altogether," as it still applies to explain and clarify subsection (b)(3)(A).

The district court did not err when it disregarded Application Note 4 and instead applied the plain text of the computer-use enhancement in § 2G1.3(b)(3)(B). The district court applied the enhancement to Houston because he jointly undertook criminal activity that involved using smartphones to solicit men to engage in prohibited sexual conduct with Minor A. We affirm the enhancement.

### C.

Houston's final argument is that the government breached the proffer agreement by referencing statements he made during the proffer session in its sentencing memorandum. Because Houston did not object below, we review for plain error. See Ruiz-Huertas, 792 F.3d at 226 (providing the four prongs of plain error review).

"Informal immunity agreements, such as proffer agreements, 'are shaped . . . by the language of the contract conferring immunity.'" United States v. Melvin, 730 F.3d 29, 37 (1st Cir. 2013) (quoting United States v. Hogan, 862 F.2d 386, 388 (1st Cir. 1988)). Houston's brief relies on and heavily quotes from the Proffer Agreement. As such, we directly quote portions of the Proffer Agreement's terms:

(2) In any prosecution brought against [Houston] . . . , the Government will not offer in evidence in its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by [Houston] at the meeting, except in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the meeting or testimony given after the meeting. The parties understand, however, that in the event of a prosecution of [Houston], the Government will provide to the Court the information which [Houston] provides pursuant to this Agreement. The parties understand that, while the Government will not introduce [Houston's] statements in evidence except as permitted in this agreement, the Government cannot bind the Court as to its appropriate use of such information and that the Court will use such information to the extent permitted by law.

(3) Notwithstanding item (2) above: . . . the Government may also use statements made by [Houston] at the meeting to rebut any evidence or arguments offered by or on behalf of [Houston] (including arguments made or issues raised <u>sua sponte</u> by the District Court) at any stage of the criminal prosecution (including bail, all phases of trial, and sentencing) in any prosecution brought against [Houston].

Houston contends the government breached these terms when it asked the district court to apply the computer-use enhancement to Houston. Specifically, in his brief, he faults the government's sentencing memorandum for urging the district court to

infer from all of the evidence, <u>including [Houston's] post-arrest statements</u>, that [Houston] would have been aware of the repeated use of phones to post advertisements for Minor A's services given the extensive amount of time

[Houston], Calhoun, and Minor A spent together over an approximately 8-day period.

Houston contends that "the only support" for the government's argument that he was aware of Calhoun and Minor A's repeated use of phones to post advertisements came from his statements during the proffer session when he admitted driving Calhoun and Minor A to a drugstore to purchase pre-paid Visa cards to post advertisements on Backpage.com. And he argues that, by definition, his proffer statements are post-arrest statements, and thus, the government improperly urged the district court to consider the protected statements.

But Houston has divorced the government's argument from its context. In the sentencing memorandum, the government quotes the statements Houston made during the first interview after he was arrested—his "post-arrest statements"—not the statements he made during his proffer session. During that initial interview the morning Houston was arrested, two officers asked Houston how customers found Calhoun's number to set up sexual encounters with Calhoun or Minor A. Houston responded, "I don't know. That's on their phone. That's on their phone. They do everything on their phone. I don't do. I told you I drive." Read in context, the government urged the district court to infer from these post-arrest statements that Houston was aware that Calhoun and Minor A regularly used a phone to

- 18 -

post advertisements.  The government did not mention or refer to Houston's proffer session statements.

The district court latched onto Houston's proffer session statements during sentencing but not at the government's request.  When Houston argued at sentencing that there was "not a single objective fact that the Government can point to in which [Houston is] involved in any degree with the use of a computer in this case," the district court asked about Houston's role in driving Minor A and Calhoun to a drugstore to purchase Visa cards to post ads on Backpage.com.  In line with the terms of the agreement, the government had submitted the proffer session record to the district court, and, also consistent with the terms, the district court could then rely on that evidence to the extent permitted by law.  Houston has not argued that the district court erred in relying on the proffer session statements sua sponte.  The fact that the district court seized on the statements does not show that the government impermissibly urged the court to do so; it shows only that the district court independently reviewed the statements and used them to rebut Houston's argument that he was not involved in using a computer in this case.  The government did not breach the terms of the proffer agreement.  We see no error, plain or otherwise.

We turn now to Calhoun's argument on appeal that the district court abused its discretion by failing to carefully consider all the evidence presented during sentencing and adequately weigh the 18 U.S.C. § 3553(a) factors. She contends the district court relied too heavily on the nature of the offense and the value of deterrence, while minimizing mitigating evidence of Calhoun's own difficult childhood in which she was sexually abused, grew up in violent households, was introduced to the drug world by relatives, and entered a series of abusive relationships.

To the extent Calhoun has attempted to raise a procedural error—that the district court "fail[ed] to consider the § 3553(a) factors," Gall v. United States, 552 U.S. 38, 51 (2007)—we review for plain error since Calhoun did not object below, see Ruiz-Huertas, 792 F.3d at 226. A district court must consider all the relevant § 3553(a) factors, but it does not need to address each factor, "one by one, in some sort of rote incantation when explicating its sentencing decision." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006). When the district court explicitly states that it has considered all of the § 3553(a) factors, "[s]uch a statement 'is entitled to some weight.'" United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (quoting Dávila-González, 595 F.3d at 49).

After adopting the Revised PSR's Guidelines calculations, the district court outlined the circumstances of the offense as well as Calhoun's criminal and personal history, and then stated it "considered all the sentencing factors authorized by law." The district court went on to address the seriousness of the offense, Minor A's vulnerability, Calhoun's history of criminal conduct, the need to protect the public and deter Calhoun from criminal conduct, the importance of treatment, and its task in determining a just punishment in light of Calhoun's guilty plea and personal history as a victim. The district court considered all the § 3553(a) factors and simply focused its analysis on the factors it considered most relevant. Further, a within-Guidelines sentence requires less explanation than one that varies from the Guidelines range. Clogston, 662 F.3d at 592. We discern no procedural error, plain or otherwise.

To the extent Calhoun attempts to argue the district court imposed a substantively unreasonable sentence, we note that the applicable standard of review "is somewhat blurred" because she did not object below. See Ruiz-Huertas, 792 F.3d at 228 (declining to decide whether a defendant must "preserve a claim that the duration of a sentence is substantively unreasonable" to avoid plain error review). But whether we

review for abuse of discretion or plain error, Calhoun's substantive reasonableness argument fails.

Calhoun primarily alleges that the district court overemphasized the seriousness of the offense and value of deterrence, while minimizing the mitigating factors of Calhoun's personal history and difficult childhood. But this complaint amounts to little more than a disagreement over how to weigh the various § 3553(a) factors. The district court addressed Calhoun's "predatory conduct" in transporting a 13-year-old for prostitution, but it also considered Calhoun's difficult upbringing, noting that she too had been victimized in the past. In the end, the district court concluded that as a mother, Calhoun understood what she was doing and how it would impact Minor A, and thus, the mitigating circumstances did not require a lesser sentence. The district court was well within its discretion in determining how much weight to give the various factors. See Clogston, 662 F.3d at 593 ("A sentencing court is under a mandate to consider a myriad of relevant factors, but the weighting of those factors is largely within the court's informed discretion."). In sentencing Calhoun to 108 months in prison, the district court provided a plausible rationale and reached a defensible result within the range of reasonable sentences. See United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008) ("[T]he linchpin of a reasonable sentence is a

- 22 -

plausible sentencing rationale and a defensible result.").  The district court did not impose a substantively unreasonable sentence.

## IV.

For the reasons stated above, we affirm the sentences the district court imposed on Defendants Alvin Houston, Jr., and Shawna Calhoun.