# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 12-10029

United States Court of Appeals
Fifth Circuit

**FILED**

August 26, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

CHANZE LAMOUNT PRINGLER,

Defendant–Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, JONES, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Following a jury trial, Defendant–Appellant Chanze Lamount Pringler ("Pringler") was convicted of aiding and abetting sex trafficking of a minor in violation of 18 U.S.C. § 1591(a) and sentenced to 405 months of imprisonment and 10 years of supervised release. Pringler appeals his conviction and sentence, challenging: (1) the sufficiency of the evidence; (2) the effectiveness of his trial counsel's performance; and (3) the calculation of his sentence under the U.S. Sentencing Guidelines. For the reasons below, we affirm.

## I. BACKGROUND

B.L., ran away from foster care while her mother was in prison. She was sixteen-years-old at the time. While away from the foster care home and staying with acquaintances, B.L. met the defendant, Chanze Pringler. Two to

No. 12-10029

three weeks after their first meeting, B.L. contacted Pringler looking for a place to stay for the night. Pringler rented a motel room for B.L., where she spent the night alone. The next morning, Pringler took her to stay at another motel with his girlfriend, Megan Norman ("Norman"). Pringler and B.L. soon began a sexual relationship.

Norman had been prostituting herself, working out of motel rooms and finding patrons by posting advertisements on the website backpage.com. Norman introduced B.L. to prostitution and began posting advertisements on backpage.com using B.L.'s picture. At first, Norman and B.L. saw patrons together, but eventually, B.L. saw patrons alone. One such encounter was captured in a video recorded by a camera in a laptop computer in the motel room where they were staying. The laptop computer belonged to Pringler, who had bought it for Norman to use. Pringler moved B.L. and Norman through at least three different hotels or motels during the course of the prostitution.

On March 16, 2011, an undercover agent responded to an online ad posted by Norman and arranged to have sex with Norman and B.L. When the officer arrived at the address that Norman gave the agent, he observed Pringler in the parking lot conducting surveillance. The officer entered the room and negotiated to have intercourse and oral sex with both females, after which Norman and B.L. were arrested. B.L. was transported to a juvenile facility but was released to a case worker because she was under the influence of marijuana. B.L. subsequently ran away.

On March 30, 2011, an undercover agent again responded to an online ad and arranged to have sex with Norman and B.L. at a hotel. When the "takedown team" arrived at the hotel, they observed Pringler's vehicle in the parking lot. A few minutes later, they saw Pringler exit the hotel, walk to his vehicle, and remain parked and on the telephone. The undercover officer

2

No. 12-10029

entered the hotel room where Norman and B.L. were waiting. The females agreed to have sex for money, after which Norman and B.L. were arrested. Inside the room, officers seized, among other things, a laptop computer that belonged to Pringler and a receipt for the hotel room indicating that Pringler had paid for it. Pringler was subsequently arrested following a traffic stop. Among the items seized was a bill of sale for the hotel room where Norman and B.L. were arrested on March 30, 2011.

Pringler was indicted in federal court for aiding and abetting the sex trafficking of a minor in violation of 18 U.S.C. § 1591(a) and 18 U.S.C. § 2. Pringler pled not guilty to the charge and had a three-day jury trial after which he was found guilty. The probation officer recommended numerous sentencing enhancements for Pringler's sentence, including (1) a two-level increase on the basis that he unduly influenced a minor to engage in prohibited sexual conduct under U.S.S.G. § 2G1.3(b)(2)(B) and (2) Pringler's crime involved the use of a computer to entice or solicit another person to engage in prohibited sexual conduct with a minor. Pringler challenged these Guidelines calculations but the district court overruled his objections. The district court adopted the PSR and sentenced Pringler within the advisory guidelines range of 405 months' imprisonment and 10 years of supervised release. Pringler filed a timely notice of appeal.

## II.    JURISDICTION

The district court had jurisdiction over this criminal case under 18 U.S.C. § 3231. This court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) over the appeal of this final judgment and sentence.

## III.    DISCUSSION

Pringler brings three issues on appeal. He challenges (1) the sufficiency of the evidence for his conviction of aiding or abetting a crime under 18 U.S.C.

3

§ 1591(a); (2) in the alternative, he argues that his trial counsel was ineffective for failing to move to acquit at the close of the government's evidence, preventing him from receiving relief before our court; and (3) he challenges the district court's application of two sentencing enhancements under the U.S. Sentencing Guidelines. We address each in turn.

## A. Sufficiency of the Evidence

Pringler first argues that the evidence is insufficient to support his conviction for aiding and abetting the sex trafficking of a minor.

Ordinarily we review a challenge to the sufficiency of a jury verdict by asking "'whether a rational jury could have found each essential element of the offense beyond a reasonable doubt.'" *United States v. Delgado*, 672 F.3d 320, 330 (5th Cir. 2012) (en banc) (quoting *United States v. Pennington,* 20 F.3d 593, 597 (5th Cir. 1994)). The parties agree, though, that Pringler's trial counsel failed to move for a judgment of acquittal at the close of the government's case. As a result, we review this unpreserved claim instead for plain error and reject the challenge "unless the record is *devoid of evidence* pointing to guilt or if the evidence is so tenuous that a conviction is shocking" or amounts to "a manifest miscarriage of justice." *Id.* at 331 (citations and internal quotation marks omitted).

The essential elements of sex trafficking of a minor under 18 U.S.C. § 1591(a) are

> (1) that the defendant knowingly recruited, enticed, harbored, transported, obtained or maintained [the victim]; (2) that the recruiting, enticing, harboring, transporting, providing, obtaining or maintaining of [the victim] was in or affecting interstate or foreign commerce, and (3) that the defendant committed such act knowing or in reckless disregard of the fact . . . that [the victim] was under the age of 18 years of age and would be caused to engage in a commercial sex act.

No. 12-10029

*United States v. Garcia–Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013) (alterations in original) (internal quotation marks omitted).  To hold a defendant liable for aiding and abetting an offense, the government must show that elements of the substantive offense occurred and that the defendant "associate[d] with the criminal activity, participate[d] in it, and acted to help it succeed." *United States v. Delgarza–Villareal*, 141 F.3d 133, 140 (5th Cir. 1997).

Pringler claims on appeal that the government has not proven the elements necessary to establish aiding and abetting liability, because it has only shown his "mere presence" at the scene of the crime.  He supports this argument by pointing to the fact that Norman and B.L. advertised themselves as "independent" prostitutes on websites.

We disagree.  The record is not devoid of evidence to support the jury's verdict and show Pringler's integral role in the criminal venture.  Pringler took the money that Norman and B.L. earned from their prostitution and used some of it to pay for hotel rooms where the women met their patrons.  Pringler bought the laptop Norman and B.L. used to advertise their services.  He drove Norman and B.L. to "outcall" appointments, and he took photographs of Norman, which he had planned for use in advertisements.  Therefore, we hold that the record is not so insufficient that the conviction amounts to plain error.

## B. Ineffective Assistance of Counsel

In the alternative, Pringler argues that his trial counsel rendered ineffective assistance by failing to move for acquittal on the aiding and abetting count.[1]

---

[1] A claim of ineffective assistance of counsel is ordinarily not reviewed on direct appeal unless it has been addressed by the district court. *United States v. Armendariz–Mata*, 949 F.2d 151, 156 (5th Cir. 1991).  In the interest of efficiency, however, we have considered

To prevail on his ineffective assistance claim, a defendant must establish that (1) his counsel's performance fell below an objective standard of competence and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If proof of one element is lacking, the court need not examine the other." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 285 (5th Cir. 1985). To establish prejudice, the defendant usually "must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Anderson*, 987 F.2d 251, 261 (5th Cir. 1993) (quoting *Strickland*, 466 U.S. at 694).

Pringler argues that, but for counsel's failure to move for acquittal, there was a reasonable probability that this court would grant relief under de novo review of his insufficiency of the evidence claim. *See Rosalez–Orozco*, 8 F.3d at 200. Under this review, our court still would review the evidence in the light most favorable to the jury verdict. *Id.* Despite the more capacious review afforded on his ineffectiveness claim, Pringler raises no further arguments that the evidence was insufficient than the one mentioned above in Part A. Therefore, at most, Pringler only reiterates that there was insufficient evidence on aiding and abetting liability, not on any of the underlying substantive elements under § 1591(a).

In our review above, we concluded that the record was not "devoid" of evidence of aiding and abetting liability. Now, we conclude that a rational jury could have found each essential element of the offense beyond a reasonable

---

claims concerning a failure to move for acquittal on direct appeal, reasoning that the record generally contains all of the evidence that could be developed with respect to the defendant's claim that his trial counsel was ineffective. *United States v. Rosalez–Orozco*, 8 F.3d 198, 199 (5th Cir. 1993).

doubt. As we noted above, evidence shows that Pringler was involved in many aspects of the criminal activity, helping it to succeed in numerous ways. He controlled the money, obtained accommodations, purchased the laptop computer used to solicit patrons, and transported Norman and B.L. to their appointments.

In addition, we find Pringler's only point that might create a doubt is implausible. He argues that that Norman and B.L. advertised themselves as independent, showing he was not involved. But as the government drew out in testimony and as a rational juror might well infer, Norman and B.L.'s representations in their advertisements were not always truthful. No evidence that Pringler points to creates a reasonable doubt, weighing all inferences in favor of the jury verdict.

Therefore, any deficient performance by Pringler's counsel did not prejudice him.

## C. Sentencing

Pringler argues that (1) the district court erred in applying a two-level enhancement for using a computer to entice, encourage, or solicit persons to engage in prohibited sexual conduct with minors pursuant to U.S.S.G. § 2G1.3(b)(3)(B); and (2) the district court erred in applying a two-level enhancement for unduly influencing a minor to engage in prohibited sexual conduct under U.S.S.G. § 2G1.3(b)(2)(B).

We review a district court's sentencing decision for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). The court must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the

chosen sentence." *Id.* We apply harmless error review to any procedural error. *United States v. Neal*, 578 F.3d 270, 274 (5th Cir. 2009); *see* Fed. R. Crim. P. 52(a).

This Court reviews the district court's interpretation and application of the Sentencing Guidelines de novo. *United States v. Richardson*, 713 F.3d 232, 237 (5th Cir. 2013). Factual findings underlying the district court's application of the Guidelines are reviewed for clear error. *United States v. Serfass*, 684 F.3d 548, 550 (5th Cir. 2012) (internal quotation marks omitted). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Id.* (internal quotation marks omitted). "A finding of fact is clearly erroneous only if, after reviewing all the evidence, [the Court is] left with the definite and firm conviction that a mistake has been committed." *Id.*

### 1. Computer Use Enhancement

The district court increased Pringler's advisory range under U.S.S.G. § 2G1.3(b)(3)(B) based on the use of a computer in the offense. Section 2G1.3(b)(3) provides for a two-level increase to the defendant's base offense level:

> If the offense involved the use of a computer or an interactive computer service to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor.

U.S.S.G. § 2G1.3(b)(3). The Commentary to the Sentencing Guidelines states:

> Subsection (b)(3) is intended to apply only to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor.

*Id.* § 2G1.3 cmt. n.4.

No. 12-10029

The parties disagree over the legal significance of application note 4. Pringler argues that §2G1.3(b)(3) does not apply to the facts of this case under application note 4. Since Pringler met B.L. in person, he did not "use . . . a computer . . . to communicate directly with a minor" or "with a person who exercises custody, care, or supervisory control of the minor." Citing *Stinson v. United States*, 508 U.S. 36, 38 (1993), the government responds that where the commentary is inconsistent with the Guideline it purports to interpret, it does not control our application of that guideline. The government also argues that, even if we apply application note 4, the district court was correct to apply the computer-use enhancement because Pringler exercised custody and control over B.L. Therefore, third parties that contacted Pringler using a computer in response to website advertisements had "communicate[d] directly with . . . a person who exercises custody . . . of the minor."

We note at the outset that if we were to apply note 4, Pringler would be ineligible for the computer use enhancement. Nothing in the record reflects that he or Norman used a computer "to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor." We reject the government's contention that the circumstances of this case could simultaneously satisfy application note 4 and the computer use enhancement. According to that argument, which is based on the unpublished Third Circuit decision in *United States v. Burnett*, 377 F. App'x 248, 252 (3d Cir. 2010) (unpublished), a pimp could use a computer to advertise or solicit sex with the minor. A third party seeking to have sex with the minor would contact the pimp using a computer. The third party in that scenario might assume the pimp had custody or control over the minor. Then, the facts would meet the requirement of application note 4, because the third party would have used a

9

No. 12-10029

computer to communicate directly "with a person who exercises custody, care, or supervisory control of the minor."

The problem with *Burnett*'s reasoning is that it would make the relevant "use of the computer" the third party's use. That would satisfy the language of application note 4 by having the third party communicate in some instances with a pimp, who has control or custody over the minor. But, the third party's "use" cannot be the "use" referred to in Subsection 3(B). Reading the third party's "use" back into the language of the Guideline, the third party does not "use the computer" to entice *another* to engage in sexual activity with the minor as Subsection 3(B) requires. He is instead using the computer to try to arrange to engage in sexual activity with the minor *himself*. So, we cannot follow the Third Circuit's attempt to harmonize Subsection 3(B) and application note 4.

Consequently, we must decide whether the computer use enhancement § 2G1.3(b)(3) applies to uses of the computer beyond the scenarios mentioned in application note 4. We have reason to avoid giving effect to an interpretive or explanatory application note only if we determine that the note "is inconsistent with, or a plainly erroneous reading of" the Guideline. *Stinson* 508 U.S. at 38. Whether application note 4 to § 2G1.3(b)(3) meets this test is an issue of first impression in this circuit.[2]

Guideline § 2G1.3(b)(3) contemplates two distinct scenarios in which the computer use enhancement might apply. Under the first scenario, Subsection

---

[2] In *United States v. Phea*, 12-51031, 2014 WL 2694223 (5th Cir. June 13, 2014), we recently upheld a sentence under Guideline § 2G1.3(b)(3)(A), where the defendant "used a computer to facilitate the travel of" a minor and "used a computer to communicate" with the minor for two days. *Id.* at *9. Since the defendant in that case had used a computer to communicate directly with a minor, the *Phea* court did not have occasion to address the inconsistency between additional note 4 and the Guideline. *Phea* also did not address a sentencing enhancement under (b)(3)(B) of the Guideline.

(3)(A) involves the use of a computer to persuade a *minor* to engage in prohibited sexual conduct.  In the second, by contrast, Subsection 3(B) involves the use of a computer to persuade, solicit, or entice a third party "john" to engage in prohibited sexual conduct *with the minor.* "'Subsection [3](B), which applies when the defendant entices 'a person' to engage in illegal sexual conduct with the minor, does not apply *without three people*—the defendant, the minor, *and the third person who is being enticed.*'"  *United States v. Murphy*, 530 F. App'x 522, 524 n.1 (6th Cir. 2013) (unpublished) (quoting *United States v. Lay,* 583 F.3d 436, 448 (6th Cir. 2009) (Merritt, J., dissenting in part) (emphasis added)) (internal quotation marks omitted).

Our sister circuits that have confronted computer use enhancements under the third party inducement scenario have divided on the proper approach.  Two circuits, the Eleventh and the Fourth, have found application note 4 inapplicable and relied on the plain meaning of the Guideline alone in upholding computer use sentencing enhancements under Subsection (3)(B).  The Fourth Circuit found that the defendant's advertisement and solicitation of customers using the Internet "fall[s] squarely within the plain language of the Guideline" and remarked that "Application Note 4 . . . appears to address only the situation posited in [Subsection] (3)(A)."  *United States v. Winbush*, 524 F. App'x 914, 916 (4th Cir. 2013).  The Eleventh Circuit similarly rejected an argument that "the [Subsection 3(B)] enhancement is inapplicable in [the defendant's] case because he did not personally solicit the minors."  *United States v. Vance*, 494 F.3d 985, 997 (11th Cir. 2007)*, superseded on other grounds by* U.S.S.G. supp. to app. C, amend. 732 (2009).  The court found that this argument "ignores the plain meaning" of the Guideline, and the defendant's communication on a website with a supposed pimp, whom the defendant assumed would provide minors for sexual activities, "squarely fit

into the plain language." *Id*; *see also Murphy*, 530 F. App'x at 528 (assuming that Subsection (3)(B) applied without discussing application note 4 where the defendant "took photographs of [the minor] that he uploaded onto his computer and burned onto compact discs" which were eventually used in flyers for his escort business).[3]

Other circuits have reached a different conclusion and found application note 4 to be authoritative.  The Seventh and Third Circuits each applied application note 4, though to reach opposite results.  The Seventh Circuit found the enhancement inapplicable based on application note 4's language, where internet ads for the defendant's minor prostitute were posted by another minor who was working for a different pimp.  *United States v. Patterson*, 576 F.3d 431, 434, 443 (7th Cir. 2009).  In contrast, the Third Circuit found the enhancement applicable even in light of application note 4's language, where the defendant made postings related to a minor prostitute on craigslist.org.  *Burnett*, 377 F. App'x at 252.  The *Burnett* court found that its application of the (b)(3)(B) enhancement was not inconsistent with application note 4, because the pimp "exercised a type of 'supervisory control' over [the minor

---

[3] In addition, on plain error review, the Ninth Circuit has noted, without deciding, that the plain language of Subsection 3(B) "would seemingly apply to the facts of this case because it contemplates using a computer to entice or solicit a third party—the 'person'—to engage in prohibited sexual conduct with the minor" while application note 4 "indicates, . . . that § 2G1.3(b)(3) would not apply to the facts of this case because the computer was not used to communicate directly with the minor or her custodian." *United States v. Jackson*, 697 F.3d 1141, 1145 (9th Cir. 2012) (declining to decide whether the plain language is inconsistent with the application note and upholding the enhancement on the ground that the district court did not commit plain error); *see also United States v. Madkins*, 390 F. App'x 849, 852 (11th Cir. 2010) (acknowledging that a "persuasive case has been made that the commentary [of application note 4] is at odds with the plain language of the [Subsection 3(B)] enhancement" but declining to reach the issue on plain error review).

prostitute]" and "individuals who responded to the postings must have believed so." *Id.*

We are persuaded by the Fourth and Eleventh Circuits and hold that application note 4 is inconsistent with Subsection 3(B).[4]  If we were to give application note 4 controlling weight, it would render Subsection 3(B) inoperable in all but a narrow subset of cases under only one of the numerous criminal statutes the Guideline covers.  In fact, under § 1591, there is no factual scenario for which an individual could receive the computer use enhancement, were we to apply application note 4.  In light of the Guideline's drafting history, we also conclude that application note 4's coverage of Subsection 3(B) is itself the result of a drafting error.

We can come up with no scenario in which conduct made criminal by § 1591 could satisfy *both* Subsection 3(B) and application note 4.  Rather, we can conceive of only one scenario in which other criminal offenses could satisfy *both* provisions.  *See* U.S.S.G. § 2G1.3 cmt. (noting that the Guideline covers not just individuals convicted under 18 U.S.C. § 1591, but also under 8 U.S.C. § 1328 (if the offense involved a minor); 18 U.S.C. §§ 2421 (if the offense involved a minor), 2422 (if the offense involved a minor), 2423, and 2425).  Section 2422(b) criminalizes "knowingly persuad[ing], induc[ing], entic[ing], or coerc[ing] any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with

---

[4] Pringler urges us to follow the Seventh Circuit's approach in *Patterson*, finding application note 4 authoritative and finding the enhancement inapplicable.  We decline to do so.  The Seventh Circuit case is distinguishable on the facts.  There, neither the defendant nor someone part of the same criminal activity used a computer to solicit patrons.  *See Patterson*, 576 F.3d at 434.  The enhancement would not have been applicable, irrespective of application note 4.

a criminal offense." 18 U.S.C. § 2422(b). An individual could commit that crime by using a computer to communicate with the minor's custodian in order to persuade the minor to engage in prohibited sexual activity, either with the defendant or the custodian. *See, e.g.*, *United States v. Berk*, 652 F.3d 132, 140 (1st Cir. 2011) (affirming conviction under § 2422(b), where defendant communicated with a minor's custodian over the Internet); *United States v. Nestor*, 574 F.3d 159, 161–62 (3d Cir. 2009) (same).

Based on our review, no other scenario would make the application note consistent with Subsection 3(B). Therefore, if we were to give application note 4 controlling weight, it would render Subsection 3(B) inoperable in all but this narrow subset of cases under only one of the criminal statutes the Guideline covers. This leads us to conclude that the application note "can't mean what it says." *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 510–11 (1989).

In addition, the drafting history of the Guideline shows that applying application note 4 to Subsection 3(B) is the result of a drafting error. The note was only intended to apply to "the situation posited in [Subsection 3(A)]." *Winbush*, 524 F. App'x at 916. Before November 1, 2004, a single guideline section covered the promotion of a commercial sex act with another, regardless of the victim's age: U.S.S.G. § 2G1.1. It contained both a provision and application note with nearly identical language to that at issue here. As subsection (b)(5)(A) then stated:

> If a computer or an Internet-access device was used to (A) persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prostitution; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with a minor, increase by 2.

Application note 8 stated:

> Subsection (b)(5)*(A)* is intended to apply only to the use of a computer or an Internet-access device to communicate directly with a  minor or with a person who exercises custody, care, or supervisory control of the minor.  Accordingly, the enhancement in subsection (b)(5)*(A)* would not apply to the use of a computer or Internet-access device to obtain airline tickets for the minor from an airline's Internet site.

(emphasis added).   Crucially, the nearly identical application note specifies that it applies, as is logical, only to Subsection 3(A) of the enhancement, not to the entire enhancement.

Then, the Commission revised § 2G1.1 effective November 1, 2004, to cover only those offenses that do not involve minors by striking the entire language of § 2G1.1 and replacing it with language that addressed only adults.  U.S.S.G. Appx. C, Vol. III, Amendment 664, page 25–31.   In the same amendment, the Commission explained that offenses involving a minor victim were now to be sentenced under § 2G1.3. *Id.* at page 33.   The Commission thereby amended the Guidelines by moving the previous language and commentary of § 2G1.1 involving minors[5] to a new section § 2G1.3 at the end of subpart 1. *Id.* at 34.   Thus came into being the new troublesome language of application note 4.   The new application note mirrors the language of the the old § 2G1.1 application note, with a big difference.   That note which applied explicitly only to subpart (A) of § 2G1.1(b)(5) now applied to *both provisions* of (b)(3).   This change was a mere drafting error.

For the foregoing reasons, we hold that the commentary in application note 4 is "inconsistent with" Guideline § 2G1.3(b)(3)(B), and we therefore follow the plain language of the Guideline alone. *Stinson*, 508 U.S. at 38; *cf. United*

---

[5] With a few semantic changes, like "Internet access device" changed to "interactive computer service."

No. 12-10029

*States v. Ashburn*, 20 F.3d 1336, 1340–41 (5th Cir. 1994) (refusing to apply application note 6 to U.S.S.G. § 2B3.1(b)(2)(F) because the note "would contradict the language of the Guidelines"), *vacated in non-relevant part,* 38 F.3d 803 (5th Cir. 1994) (en banc).

Applying the language of the Guideline alone, we conclude that the district court did not err in applying the computer use enhancement on these facts.[6] Pringler owned the computer that Norman repeatedly used to advertise her services on websites.  Based on Norman's testimony, Pringler bought the computer, showed her how to use the webcam feature on the computer, knew that Norman and B.L. were using the webcam to capture video of their encounters with customers, and knew of Norman's use of the computer for advertising B.L.'s services.  Therefore, the district court could conclude that the offense involved the use of a computer to induce third parties to engage in sexual activity with a minor.

### 2. Undue Influence of a Minor Enhancement

Over Pringler's objection, the district court increased Pringler's offense level by two under U.S.S.G. § 2G1.3(b)(2)(B) based on its conclusion that Pringler exerted undue influence over B.L. during the offense.  Section 2G1.3(b)(2)(B) provides for the two-level increase if "a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct[.]"  Section 2G1.3(b)(2)(B) requires the district court to "closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior."  U.S.S.G. § 2G1.3(b)(2) cmt. n.3(B).

---

[6] Pringler does not challenge the adequacy of the evidence under the language of the Guideline, only under application note 4.

No. 12-10029

Pringler contends that B.L. engaged in prostitution of her own volition. The government responds that significant evidence presented at trial supports the district court's determination.

This Court has upheld the application of the undue-influence provision where victims testified to their fear of leaving. *See United States v. Anderson*, 560 F.3d 275, 283 (5th Cir. 2009). In this case, the victim likewise testified to her fear of leaving. B.L. testified that Pringler told her "You can't run from me" and "You're not going anywhere." Pringler also would ask B.L. "Are you going to leave me?" B.L. explained that, as a result of Pringler's statements and questions, she did not think that she could leave. B.L. also testified about Pringler's physical abuse of Norman and to unlawful sexual relations with her pimp. The government also presented testimony from a police officer with significant experience investigating prostitution, who explained that physical abuse of one person in the presence of another can be used to control the person who is watching. The officer also testified that sexual relations between a pimp and his prostitute is another control mechanism. The district court therefore had ample evidence with which to find that Pringler "compromised the voluntariness of [B.L.'s] behavior." U.S.S.G. § 2G1.3(b)(2) cmt. n.3(B). There is no clear error here.

## IV. CONCLUSION

In conclusion, we AFFIRM the conviction and sentence.