# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51025

United States Court of Appeals
Fif h Circuit

**FILED**
August 22, 2017

**Lyle W. Cayce**
Clerk

UNITED STATES OF AMERICA,

>     Plaintiff - Appellee

v.

DEQWON SAQUOD LEWIS, also known as Rico; STARISHA SHONTEL
MOORE, also known as Skinny,

>     Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 1:15-CR-350

Before STEWART, Chief Judge, and JONES and CLEMENT, Circuit Judges.

PER CURIAM:*

## I.     INTRODUCTION

In 2015, Defendants-Appellants Deqwon Lewis and Starisha Moore recruited two underage girls, KM and CM, to engage in sex acts for money, occasionally transporting KM across state lines to do so. Following a routine traffic stop, police arrested Lewis and Moore, charging them each with two

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-51025

counts of Aiding and Abetting the Sex Trafficking of a Minor and one count of Interstate Transportation of a Minor to Engage in Prostitution. After a six-day trial, the jury found them both guilty of all three counts. On appeal, Lewis and Moore challenge the reasonableness of their sentences. Moore also contests the sufficiency of the evidence against her and argues that the district court erred in two of its evidentiary decisions, requiring a new trial. For the following reasons, we affirm.

## II.    BACKGROUND

In May of 2015, after her relationship with her family became strained, seventeen-year-old CM left her mother's home in Houston, Texas to live with a friend. A few weeks later, CM contacted an acquaintance, Selena, who introduced her to Lewis and Moore. The next day, Moore posted an advertisement for "dates" with CM on Backpage.com, "a website notorious for facilitating prostitution." *United States v. Lockhart*, 844 F.3d 501, 507 (5th Cir. 2016). That same day, CM engaged in commercial sex acts with six or seven men who had responded to the advertisement. When the dates ended, all of the money went to Lewis but was deposited into Moore's bank account. This scheme continued for approximately three months, until CM escaped in mid-August of 2015.

Lewis and Moore recruited a second minor, fourteen-year-old KM, in July of 2015. KM met Appellants after she and her friend, Semaj, ran away from a substance treatment facility in Austin, Texas. After seeing KM and Semaj in downtown Austin, Lewis instructed CM to ask the girls if they needed a ride, which they accepted. While stopped at a 7-Eleven, CM asked KM if she wanted to join their group, claiming they would "provide for [her]." KM agreed, reasoning that she had nowhere else to go. Thereafter, Lewis drove CM, KM, and Moore to a Motel 6 where Moore had already arranged a "date" for both girls.

2

No. 16-51025

For the next several weeks, Lewis and Moore used the Internet to set up "dates" for the minors, traveling between Austin, Houston, and Dallas, Texas. Moore would pay for and post advertisements to Backpage.com, providing her own phone number as the point of contact. When johns would call, she would make the logistical arrangements for the "dates." Moore required each customer to send a picture of themselves to her and Lewis before each date. The dates were either "in-calls," where the johns would come to CM and KM, or "out-calls," where CM and KM would travel to the johns. When the girls had an out-call, either Lewis or Moore would drive the girls to the men and wait for them in the car. For the in-calls, Moore would book and pay for motel rooms using cash, and she and Lewis would wait outside the motel in the car. Lewis imposed a daily quota and would deprive the girls of food and sleep if they did not meet it. If the girls spoke out, Lewis would hit them. To help them sustain this grueling regimen, Moore would provide the girls with ecstasy, alcohol, and Xanax.

After CM left the group in August 2015, Lewis, Moore, and KM drove to Oklahoma City, Oklahoma; Chicago, Illinois; Flint, Michigan; and Detroit, Michigan. In each city, Moore posted a Backpage.com advertisement for KM. In response to those advertisements, KM engaged in sex acts in exchange for money in all three states. While driving though Michigan on August 26, 2015, a Michigan State Trooper pulled the car over for a routine traffic stop. During the stop, the trooper smelled marijuana and asked for Moore, Lewis, and KM's identification. Although KM initially lied about her name and age, as Lewis and Moore had instructed, the trooper discovered that she was in fact only fifteen years old and reported as a runaway from Texas. Thereafter, authorities sent KM to a juvenile detention facility in Lubbock, Texas, and on December 1, 2015, a federal grand jury charged Lewis and Moore with two counts of Aiding and Abetting the Sex Trafficking of a Minor and one count of

3

No. 16-51025

Interstate Transportation of a Minor to Engage in Prostitution. On December 2, 2015, officers arrested Lewis and Moore at a hotel in Houston, Texas.

At trial, CM testified that after she met with men for "dates," she would give all the money she received to Moore and Lewis. She explained that she was terrified of Lewis and was not allowed to skip any "dates" he and Moore had arranged for her. After leaving the group, CM Facebook-messaged her cousin, explaining that "[Lewis] slapped [her]. Forced [her] to have sex. [She] was begging him to let [her] just take a day off. [She] was in so much pain. [She] cried every day." KM also testified at trial. She explained that Lewis and Moore would give her drugs to stay awake and work. Like CM, KM testified that she was afraid of Lewis and that he hit her on more than one occasion.

At the close of the Government's case-in-chief, Moore moved for a Rule 29 judgment of acquittal, which the court denied. At the close of the evidence, Moore renewed her motion, which the court again denied. After a six-day trial, the jury found both Lewis and Moore guilty of all three counts.

In Lewis's Presentence Investigation Report ("PSR"), the probation office determined that Lewis's base offense level was 30. U.S.S.G. § 2G1.3. After including three two-level specific offense characteristic enhancements pursuant to § 2G1.3(b)(2)(B) (unduly influencing a minor to engage in sex act), (3)(B) (using computer to solicit a person to engage in sex act with minor), and (4)(A) (offense involved commission of sex act); a two-level enhancement for Lewis's role in the scheme, § 3B1.1(c) (leader of criminal activity); and a two-level, multi-count adjustment, § 3D1.4, the probation office calculated Lewis's total offense level as 40. The offense level of 40 combined with a criminal history category I resulted in a Guidelines range of 292 to 365 months' imprisonment.

4

No. 16-51025

Lewis objected to the PSR, arguing that (1) the probation office improperly applied certain enhancements for offense characteristics and his role in the crime, and (2) he was entitled to a downward variance pursuant to 18 U.S.C. § 3553. The probation office declined to amend the PSR. Lewis reiterated his objections to the PSR at sentencing, which the district court overruled. The court ultimately sentenced Lewis to a low-end Guidelines sentence of 300 months' imprisonment followed by five years' supervised release on all three counts to run concurrently.

As for Moore, the probation office also placed her base offense level at 30. *See* § 2G1.3  Thereafter, imposing the same three two-level specific offense characteristic enhancements as it did to Lewis's offense level and the same two-level enhancement for a multi-count indictment, the probation office set Moore's total offense level at 38. The total offense level of 38, combined with Moore's criminal history category of I, resulted in a Guidelines range of 235 to 293 months' imprisonment. Moore did not initially object to the PSR. At sentencing, however, she requested a downward variance, which the Government opposed and the court denied. Ultimately, the court sentenced Moore at the low-end of the Guidelines range to 235 months' imprisonment followed by five years' supervised release on all three counts to run concurrently.

## III.  DISCUSSION

On appeal, Moore claims that the evidence presented at trial was insufficient as to all three counts and argues that the district court erred in two of its evidentiary decisions. Additionally, both Lewis and Moore challenge the reasonableness of their sentences. We address each issue in turn.

No. 16-51025

### a. Sufficiency of the Evidence

We review the denial of a motion for judgment of acquittal de novo. *United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003). Still, this court's review of a jury's verdict is "highly deferential." *United States v. McNealy*, 625 F.3d 858, 870 (5th Cir. 2010). Thus, the relevant question is whether, "viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *United States v. Clark*, 577 F.3d 273, 284 (5th Cir. 2009) (internal quotation marks omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

On appeal, Moore argues that (1) she was not a principal in Lewis's sex trafficking scheme, but rather a victim of it; (2) the Government failed to prove that she "recruited, enticed, or obtained" CM and KM "for the purposes of having [them] engage in commercial sex acts"; and (3) the Government did not present sufficient evidence to show that Moore aided and abetted Lewis's crimes. She argues that it was Lewis and Selena, the woman who introduced CM to Moore, who caused CM to engage in commercial sex acts. Although she admittedly posted the advertisements to Backpage.com, paid for hotel rooms, gave CM and KM drugs, and drove KM to "dates" in- and out-of-state, she did so at Lewis's behest. She also alleges that she never kept any of the money the girls gave her, but rather, she gave it all to Lewis—the money was deposited in her bank account because "[she was] the only one who had one."

The indictment alleged in Counts One and Two that Lewis and Moore "aided and abetted each other" and "did cause [CM and KM] to engage in a commercial sex act, knowing that [CM and KM] had not attained the age of 18 years, recklessly disregarding that [CM and KM] had not attained the age of 18 years, and having had a reasonable opportunity to observe [CM and KM]" in violation of 18 U.S.C. § 1591(a), (b)(2). The evidence indicates that Moore's

actions substantially contributed to CM and KM's engaging in commercial sex acts.   Based on the evidence presented at trial, a reasonable jury could conclude, at the least, that Lewis's conduct "caused" the girls to engage in commercial sex acts and that Moore's purposeful involvement in the crime "help[ed] it succeed."  *United States v. Pringler*, 765 F.3d 445, 449 (5th Cir. 2014) (explaining that to be found guilty of aiding and abetting the sex trafficking of children, the Government must show that the underlying crime "occurred and that the defendant associated with the criminal activity, participated in it, and acted to help it succeed" (internal quotation marks and alterations omitted)).

As for Count Three (Aiding and Abetting the Interstate Transportation of a Minor to Engage in Prostitution), it is clear that Moore knowingly assisted Lewis in transporting KM across state lines with the intent that KM engage in prostitution.  *See* 18 U.S.C. § 2423(a); *Sealed Appellee v. Sealed Appellant*, 825 F.3d 247, 250–51, 253–54 (5th Cir. 2016); *Pringler*, 765 F.3d at 449.

### b.  Evidentiary Objections

When a defendant timely objects to the district court's evidentiary ruling, this court reviews that ruling for abuse of discretion.  *United States v. Akins*, 746 F.3d 590, 601 (5th Cir. 2014).  If a defendant fails to timely object, this court reviews for plain error.  *United States v. Burton*, 126 F.3d 666, 671 (5th Cir. 1997).

At trial, Julie Rigsby, founder of For the Silent, a charitable organization that "works with at-risk youth and victims of domestic minor sex trafficking," testified against Lewis and Moore.   Over Lewis's objection, which Moore notably did not join, the district court allowed Rigsby to testify that after she asked Semaj whether the picture Rigsby had was of KM, "[Semaj] . . . said yes, that was her."  Moore argues that the district court plainly erred in allowing this statement, characterizing it as inadmissible hearsay evidence.

No. 16-51025

Additionally, on direct examination, the prosecutor asked KM how she would describe Lewis and Moore's relationship, adding "Were they more partners or was she under his control?"  Moore objected to this statement, which the court overruled.  Moore argues the district court abused its discretion in allowing the prosecutor to ask CM this question, which she argues was leading.

Neither contention is persuasive.  Rigby's testimony was not hearsay, as it was not offered for the truth of the matter asserted, *see* FED. R. EVID. 801(c); *United States v. Parry*, 649 F.2d 292, 294–95 (5th Cir. 1981), and the question the prosecutor posed to CM was not leading, as it did not suggest the answer CM should give, *see Leading Question*, BLACK'S LAW DICTIONARY (10th ed. 2014); *United States v. Cephus*, 684 F.3d 703, 707–08 (7th Cir. 2012).

### c.  Sentencing

Lewis and Moore both challenge the reasonableness of their sentences. Moore contends that the district court failed to sufficiently articulate its reasons for not sentencing her below her Guidelines range.  Lewis argues that he was entitled to a two-point reduction for accepting responsibility, the district court erred in including a two-point enhancement that does not have empirical support, and his personal history warranted a downward variance in his sentence, which would also be consistent with sentences given to defendants in similar cases.

When a district court sentences a defendant to a sentence that falls within a properly calculated Guidelines range, the sentence is presumptively reasonable.  *Rita v. United States*, 551 U.S. 338, 346–47 (2007); *accord United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006).  When a defendant presents the district court with nonfrivolous arguments in favor of a sentence outside the Guidelines range, the district court must hear and consider the defendant's arguments and evidence.  *Rita*, 551 U.S. at 356–59.  However, "[t]he law leaves

much, in this respect, to the judge's own professional judgment." *Id.* at 356. Accordingly, "[e]rror does not necessarily result when the district court's reasons . . . are not clearly listed for our review." *United States v. Bonilla*, 524 F.3d 647, 657 (5th Cir. 2008). "A sentence will be upheld so long as it results from a correct application of the guidelines to factual findings that are not clearly erroneous." *United States v. Medina–Saldana*, 911 F.2d 1023, 1024 (5th Cir. 1990).

In this case, prior to sentencing Moore, the district court sufficiently articulated its reasons for rejecting Moore's request for a downward variance. *See Rita*, 551 U.S. at 359; *United States v. Gonzalez-Bello*, 481 F. App'x 964, 965–66 (5th Cir. 2012) ("The district court stated, however, that it had determined that a sentence at the bottom of the guideline range was adequate to sanction [the defendant's] criminal conduct and to satisfy the sentencing factors of 18 U.S.C. § 3553(a). The district court's explanation of the sentence imposed, while brief, was legally sufficient.").

As for Lewis, the district court properly calculated his Guidelines range and thereafter sentenced him at the low end of that range to 300 months' imprisonment. The reasons Lewis articulates for why he believes his sentence is unreasonable belies the record: either the mitigating factors he lists in his brief are incorporated in his sentence because sentencing enhancements for those acts were not included in his Guidelines calculation or the enhancement clearly applies to his conduct. That empirical evidence does not support one of the enhancements is immaterial. *See United States v. Miller*, 665 F.3d 114, 121 (5th Cir. 2011) ("Empirically based or not, the Guidelines remain the Guidelines. It is for the Commission to alter or amend them.").

## IV.    CONCLUSION

For the foregoing reasons, Lewis and Moore's convictions and sentences are AFFIRMED.