# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2024

Lyle W. Cayce
Clerk

———————————

No. 23-20354

———————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Sha Kendrick Smith,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CR-526-1

———————————————————————

Before Jones, Smith, and Ho, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Sha Kendrick Smith was convicted under 18 U.S.C. § 2422(b) of enticing a minor to engage in prostitution. Smith's minor victim ("MV") was a thirteen-year-old runaway girl who was a ward of the state.

The district court imposed sentencing enhancements; Smith appeals two of them. First, he appeals the enhancement under U.S.S.G. § 2G1.3(b)(2)(B) because of his undue influence over MV. Second, he questions the enhancement under U.S.S.G. § 3A1.1(b)(1) because of MV's status as a vulnerable victim.

We reject Smith's challenges and affirm his sentence.

## I.

MV ran away from her middle school. She was suspected to be with Smith—whom she referred to as "Kendrick," a pimp who was believed to be causing MV to engage in commercial sex. While she was a runaway, MV used a cell phone that Kendrick provided to communicate with a Court Appointed Special Advocate ("CASA"). MV told the CASA that Kendrick, who always carries a gun, took her to a trailer park and caused her to engage in commercial sex. She stated that Kendrick also had sex with her. She texted photos to the CASA.

MV told the CASA that she was staying in a dwelling with Kendrick and his mother. She was allowed to be inside during the day but could not be in the residence at night and had to sleep in a car in the driveway.

According to MV, Smith took her to multiple locations over twelve days; MV engaged in commercial sex with at least eight men. Smith reportedly charged the men between $70 and $100 to have sex with MV. MV initially told Smith that she was eighteen years old, but he "learned [that] she was under the age of 18 while she was engaged in prostitution."

A few weeks after MV ran away, a police officer responded to a call regarding a sexual assault. The officer talked to the complainant, who was identified as MV.

MV informed the officer that she left her middle school a few weeks earlier and met a person who offered to give her a ride. MV went with the person to his house for three days but did not have sex with him. After she left the person's home, she met a forty-year-old man who offered to pay her $20 to watch her take a shower.

She revealed that she later met a man, identified as Smith, at a gas

station near her middle school; she carried a clear backpack containing pencils and papers as a student would. Smith, who was twenty-one, offered to help MV make money by participating in commercial sex; MV agreed to engage in prostitution.

After her interview with the officer, MV ran away again within two days. Nearly two weeks later, she walked into a police station. Before she was questioned by officers, MV was taken to a hospital to be medically cleared because she had consumed drugs.

MV informed officers that she had returned to prostitution. She maintained that she had willingly engaged in prostitution because she needed money. She stated that she met her "pimp" at a gas station near her middle school but declined to give further details. She insisted that her "pimp," who also tried to earn money by selling marihuana, was a "good guy" who did not hit her. MV asserted that her "pimp" saw the Amber Alert that was issued for her and told her to turn herself into CPS. A stranger brought her to the police station.

During a subsequent interview with officers, MV stated that her "pimp," identified as Smith, met her on the streets and took her to his mother's trailer. MV stayed there with Smith, who had sex with her and caused her to engage in commercial sex with other men. The men paid Smith for sex with her; Smith kept all the money. Officers learned that people who knew Smith, a suspected gang member, feared him and thought he was dangerous.

Officers discovered that Smith's mother owned the phone number for the cell phone that Smith provided to MV. Officers recovered information from a Snapchat account that they traced to Smith. A picture from the account set forth the prices for sexual encounters. Other pictures showed MV in a sports bra with her pants pulled down to reveal her buttocks and with

her breasts exposed.  The photographs were sent to other Snapchat users. The account also included photographs of drugs, pictures of Smith holding a pistol, and discussions about the sale of drugs.

Officers talked to Smith's mother as part of their investigation. Smith's mother indicated that her fiancé had driven MV to Houston and that MV looked to be about fifteen.  Additionally, officers talked to Smith's sister, who suspected that MV was under the age of eighteen and was engaging in commercial sex.

Smith subsequently pleaded guilty to coercion and enticement of a minor.  *See* 18 U.S.C. § 2422(b).  The presentence investigation report ("PSR") assessed a total offense level of 38.  Smith received, *inter alia*, (1) a two-level adjustment per U.S.S.G. § 2G1.3(b)(2)(B) on the ground that he unduly influenced a minor to engage in prohibited sexual conduct and (2) a two-level adjustment under U.S.S.G. § 3A1.1(b)(1) on the basis that he knew or should have known that MV was a vulnerable victim.  He was placed in criminal history category I.  His guidelines range was 235 to 293 months.

Smith objected to the PSR.  The government filed a response.  The probation officer submitted two addenda to the PSR.

At the sentencing hearing, the district court overruled Smith's objection to the undue-influence enhancement "for the reasons stated in the government's response and the addendum."  It overruled Smith's objection to the vulnerable-victim enhancement "because the Court concludes that the credible evidence established for the reasons stated in the addendum, the [PSR], and the government's opposition that you either knew or should have known that the girl in question was a vulnerable victim."  The court adopted the PSR and sentenced Smith to 235 months of imprisonment and ten years of supervised release.

II.

The district court evaluates whether the adjustment should be applied under the preponderance-of-the-evidence standard. *See United States v. Herrera-Solorzano*, 114 F.3d 48, 50 (5th Cir. 1997).

> This Court reviews the district court's interpretation and application of the Sentencing Guidelines de novo. Factual findings underlying the district court's application of the Guidelines are reviewed for clear error. There is no clear error if the district court's finding is plausible in light of the record as a whole. A finding of fact is clearly erroneous only if, after reviewing all the evidence, the Court is left with the definite and firm conviction that a mistake has been committed.

*United States v. Pringler*, 765 F.3d 445, 451 (5th Cir. 2014) (cleaned up).

Whether somebody exercised undue influence over a minor is a factual finding subject to clear-error review. *See id.* at 456.[1] Likewise "a district court's application of 'unusual vulnerability' in the arena of sentencing is for clear error." *United States v. Swenson*, 25 F.4th 309, 321 (5th Cir. 2022) (citation omitted).

The district court may rely on facts in the PSR so long as they are supported by sufficient indicia of reliability and not rebutted by the defendant. *See United States v. Harris*, 702 F.3d 226, 230–31 (5th Cir. 2012). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Pringler*, 765 F.3d at 451 (citation omitted).

There is some dispute about whether Smith properly preserved his argument that we cannot consider MV's age at all. We pretermit that as not

---

[1] *See, e.g.*, *United States v. Carter*, 960 F.3d 1007, 1011 (8th Cir. 2020) ("Whether a defendant unduly influenced a victim is a factual question subject to clear error review." (citation omitted)); *United States v. Whyte*, 928 F.3d 1317, 1336 (11th Cir. 2019) ("Because undue influence is a factual finding, we review for clear error." (citation omitted)).

No. 23-20354

being outcome-determinative.

## III.

Section 2G1.3(b)(2)(B) states,

> If . . . a participant . . . unduly influenced a minor to engage
> in prohibited sexual conduct, increase by 2 levels.
>
> . . .
>
> In determining whether subsection (b)(2)(B) applies, the court
> should closely consider the facts of the case to determine
> whether a participant's influence over the minor compromised
> the voluntariness of the minor's behavior. The voluntariness of
> the minor's behavior may be compromised without prohibited
> sexual conduct occurring.

*Id.* & cmt. n. 3.[2] There is no dispute that MV engaged in prohibited sexual
conduct. The central question, then, is whether it is plausible in light of the
record as a whole that the voluntariness of MV's behavior was compromised.
The answer to that question is easily yes.

All one needs to do is compare side-by-side the facts that plausibly
support each side of the analysis. In support of voluntariness (or at least miti-
gating factors that support the opposite finding):

- MV voluntarily absconded from her middle school.

---

[2] The commentary also provides, "In a case in which a participant is at least 10
years older than the minor, there shall be a rebuttable presumption that subsection
(b)(2)(B) applies. In such a case, some degree of undue influence can be presumed because
of the substantial difference in age between the participant and the minor." *Id.* That
presumption does not apply here (where the age gap is closer to eight years). But it does
help us understand what this guideline provision is targeting. Smith would have us believe
that this enhancement should be presumptively applied where there is a ten-year gap but
that applying it to an eight-year gap is clear error. That is an uphill battle, and one which
Smith loses.

No. 23-20354

- MV had gone and stayed at another man's house for a few days before encountering Smith.
- MV had been offered to shower in front of another man for $20 before meeting Smith.
- MV characterized her prostitution as willing.[3]
- MV's statement that Smith was a "good guy" who never hit her.
- MV's apparently free ability to use a phone given to her by Smith.
- Smith does not seem to have prevented her from leaving.

And undermining voluntariness:

- MV was 13.
- Smith was 8 years her senior.
- Smith and MV had sex.[4]
- Smith was 6'2", 300 lbs.
- MV noticed that Smith always carried a gun, and he posted pictures of himself online holding a pistol.
- People in Smith's area were afraid of him because they knew he was dangerous.
- MV was a ward of the state in need of money.
- Smith coordinated MV's transportation to and from other men.
- Smith kept all the money generated.
- Smith took MV to his mother's home and she was made to sleep outside in the car.
- There is reason to believe that MV used drugs during her time with Smith.
- Smith only ended her prostitution after an Amber Alert was issued.

---

[3] Though it is not clear that this should even be weighed as a plausible factor when a minor is the speaker. *Cf. United States v. Hornbuckle*, 784 F.3d 549, 556 (9th Cir. 2015) ("[A] victim's willingness is insufficient to compel a finding of no undue influence." (citing, *inter alia*, *United States v. Anderson*, 560 F.3d 275, 283 (5th Cir. 2009)).

[4] This is a control mechanism that pimps sometimes use. *See Pringler*, 765 F.3d at 456.

- Smith gave her a cell phone.[5]

Recall the standard of review. Considering these facts as a whole, could one *plausibly* find that the voluntariness of MV's conduct was compromised? Easily.

The defense's remaining arguments are meritless. The defense points out that while Smith and MV had sex at least once, there is no evidence it was not consensual or that he knew she was a minor at the time. Indeed, says the defense, there is no evidence Smith ever learned she was thirteen, but only that she was a minor.[6] This is meritless. Yes, obviously non-consensual sex with a minor Smith knew was thirteen would be worse. But that does not mean that the fact that he had sex with MV is not a strong data point in the case for compromised voluntariness. Indeed, we have affirmed this enhancement in part based on evidence that "sexual relations between a pimp and his prostitute is [a] control mechanism." *Pringler*, 765 F.3d at 456.

Citing the Sixth Circuit,[7] the defense also avers that there must be some set of cases of child prostitution to which this enhancement does not apply. Whether or not that is true, there is plenty of room between applying the enhancement to this case and always applying the enhancement to this sort of offense.

Smith also compares this case to *United States v. Myers*, 481 F.3d 1107

---

[5] Gifts can be a mechanism of control. *See, e.g.*, *United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014), *overruled on other grounds by Johnson v. United States*, 576 U.S. 591 (2015).

[6] Smith tries to make an issue out of his knowledge of MV's age. That is not relevant. "The undue-influence enhancement . . . does not contain a *mens rea* requirement that the defendant 'know' the victim is a minor." *United States v. Cruz*, 976 F.3d 656, 662 (6th Cir. 2020). Even if it were relevant, it is doubtful that Smith did not know of her minority.

[7] *United States v. Davis*, 924 F.3d 899, 904 n.2 (6th Cir. 2019).

(8th Cir. 2007). But that case is distinct in many respects. First, that court affirmed a district court's finding that the enhancement did not apply. *Id.* at 1108. Here, defense asks us to find clear error and reverse. Second, this case involves, *inter alia*, a younger victim, the presence of a firearm, and the victim's desperation as emphasized by her willingness to sleep in a car outside.

Finally, Smith insists on evidence that explicitly connects the factors above to the involuntariness of MV's conduct. That asks too much. Smith points to no caselaw that would impose such a requirement.[8] And in this posture, we need only review the record as a whole to determine whether the finding that her voluntariness was compromised was *plausible*.

Smith's case rests on the following presumption: When a thirteen-year-old girl says she voluntarily worked for her "pimp" who was a "good guy," you'd better believe her.[9] That's preposterous. There is ample data here to support a plausible finding that MV's voluntariness was undermined.

## IV.

Section 3A1.1(b)(1) provides, "If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels." The commentary continues:

> For purposes of subsection (b), "vulnerable victim" means a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under

---

[8] The references to *Pringler*, 765 F.3d at 456, and *Anderson*, 560 F.3d at 283, are of no help to Smith. Though both cases indicate that fear of leaving a pimp is a factor (maybe even a sufficient factor) in affirming the enhancement, neither suggests that it is necessary.

[9] "The Court can (and should) stop with [MV]'s express admission to having voluntarily engaged in the relevant prohibited sexual activity . . . ." Appellant's Reply Br. at 4.

> § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.
>
> . . .
>
> Do not apply subsection (b) if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age.

*Id.* cmt. n. 2. "[W]e have not required a specific 'targeting' of a vulnerable victim beyond the requirement that the defendant knew or should have known of the vulnerability." *United States v. Burgos*, 137 F.3d 841, 843–44 (5th Cir. 1998). "The vulnerable victim guideline is primarily concerned with the impaired capacity of the victim to detect or prevent crime, or a victim who is less able to resist than the typical victim of the offense of the conviction." *United States v. Myers*, 772 F.3d 213, 220 (5th Cir. 2014) (cleaned up).

> Smith urges that the district court improperly considered MV's age:
>
> Moreover, even assuming that [MV]'s minority would establish particular susceptibility to being enticed to engage in prostitution, neither her age, nor factors "related to" her age, could serve as grounds for the enhancement because "age" was incorporated into Section 2G1.3(a)(3)'s elevated base offense level—applicable, as it is, only to individuals convicted under Section 2422(b) of enticing a *minor* to engage in prostitution or unlawful sexual activity, or convicted of transporting a *minor* for the same purpose under 18 U.S.C. § 2423(a).

Read broadly, this is obviously wrong. And in a footnote appended to this passage, Smith concedes that although MV was vulnerable compared to other minors, "vulnerabilities related to her age could still support the

enhancement."

The application of the vulnerable-victim enhancement based on age-related factors is barred only where "the victim's vulnerability is . . . fully incorporated into the offense guideline[s]." *United States v. Jenkins*, 712 F.3d 209, 214 (5th Cir. 2013). "[I]n . . . *Jenkins*, we rejected an interpretation of the Guidelines commentary that would preclude the vulnerable-victim enhancement from ever being applied to account for a vulnerability that is *related to* age." *United States v. Ramos*, 739 F.3d 250, 252 (5th Cir. 2014) (footnote omitted). MV's age was not fully incorporated into the guidelines. There was no increase to the baseline based on her age (whereas there would have been if she was younger than twelve, *see* U.S.S.G. § 2G1.3(b)(5)[10]). And her age makes her relatively more vulnerable than an otherwise similarly situated seventeen-year-old.[11]

The district court adopted the PSR and the government's related arguments. Those materials note the following factors:

- "that she was a runaway and had nowhere to live and only had a backpack to her name,"
- "[h]er willingness to put herself in danger by engaging in commercial sex was borne out of desperation,"
- that "the victim was 13 years old,"
- that she was "a ward of the state."

As to scienter, the government contended "[t]he twelve-day period the Defendant spent with [MV] was more than enough time for him to know how

---

[10] A situation that still would not bar the application of the enhancement at issue here. *See, e.g.*, *Jenkins*, 712 F.3d at 214.

[11] Because it is permissible in this instance to consider age-related factors, Smith's argument that leaning on such factors is an independent reason to throw out the sentence is meritless.

vulnerable she was." It also asserted his knowledge as to her underlying desperateness.

As with the first issue, the standard of review goes a long way in resolving this second issue. It only needs to be plausible in light of the record as a whole that Smith knew MV was unusually vulnerable. *Pringler*, 765 F.3d at 451. This record readily clears that bar. Smith insists that there needs to be record evidence that MV's condition (e.g., being a ward of the state) made her unusually vulnerable. But he cites no legal support to that effect. Moreover, since our role is to look at the whole record for plausibility of these findings, we are allowed to make reasonable inferences. *Cf. Harris*, 702 F.3d at 230–31 ("When faced with facts contained in the PSR that are supported by an adequate evidentiary basis with sufficient indicia of reliability, a defendant must offer rebuttal evidence demonstrating that those facts are materially untrue, inaccurate or unreliable. Mere objections to such supported facts are generally insufficient." (cleaned up)). MV was a thirteen-year-old, a runaway, a ward of the state, desperate for money and willing to sleep in a car. Smith spent two weeks with her and quite likely learned about most of her vulnerabilities. Relative to the population captured by the statute as a whole—all minors enticed into prostitution—it is plausible that MV was unusually vulnerable and that Smith knew it.

Smith's objections are meritless. First, he posits that MV's status as a ward of the state has no bearing on her vulnerability. He points to several out-of-circuit examples in which courts have vacated the application of this enhancement where it was applied based on turbulent home-life circumstances.[12] The government responds to several of those cited cases. *Nielsen*

---

[12] Citing *United States v. Nielsen*, 694 F.3d 1032, 1036 (9th Cir. 2012), *United States v. Scott*, 529 F.3d 1290, 1302 (10th Cir. 2008), and *United States v. Williams*; 291 F.3d 1180,

faulted the district court for comparing the victim to the general population, 694 F.3d at 1036, and may have been applying *de novo* review, *see id.* at 1041 (Callahan, J., dissenting). *Scott* was based on a different underlying offense requiring the transportation of the victim across state lines (the Mann Act). *See* 529 F.3d at 1293. The government suggests that that element shifts the relevant comparator. After all, it would seem, based on the nature of that offense, that Mann Act victims are far more likely to be runaways than are victims under the statute charged here. The government also marshals its own string cite of out-of-circuit cases in which courts affirmed the application of the guidelines based on turbulent at-home circumstances.[13] We disagree with Smith and—without expressing any view on whether it would be sufficient on its own to sustain this enhancement—conclude that being a ward of the state might plausibly make one minor more vulnerable than an otherwise equally situated minor.

Smith also asserts that desire for money is not uncommon. He cites *Swenson*, 25 F.4th at 321, for a general proposition about how the enhancement works. But *Swenson* has little relation to the facts of this case. *See id.* (affirming the district court's application of the enhancement to mail fraud).

Finally, Smith denies his own knowledge of the factors. He asserts that there is no clear evidence that he knew MV was a ward of the state. And he maintains that there is no evidence he knew she was as young as thirteen. The government retorts that the amount of time MV spent with Smith indicates he "knew or should have known" the desperation of her situation. The

---

1195–96 (9th Cir. 2002), *overruled on other grounds by United States v. Gonzales*, 506 F.3d 940, 942 (9th Cir. 2007) (en banc)).

[13] Citing *United States v. Lowe*, 763 F. App'x 878, 879-80 (11th Cir. 2019), *United States v. Irving*, 554 F.3d 64, 75 (2d Cir. 2009), and *United States v. Evans*, 285 F.3d 664, 672 (8th Cir. 2002)).

government is right that at the very least Smith should have known of MV's vulnerability. MV's minority and economic desperation were readily apparent from her appearance and the circumstances under which she and Smith met. Her willingness to engage in the acts that Smith facilitated served as yet another indicator. And even if her vulnerability was not apparent at first blush, the amount of time that Smith spent with MV in this context supports a plausible finding that Smith should have known of her vulnerabilities.

The judgment of sentence is AFFIRMED.